**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| JOHN SIMONIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 4:22-cv-233 |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| KRAFT HEINZ FOODS COMPANY ) | |
| LLC, ) | |
| <u>Serve Registered Agent</u>: ) | |
| CT Corporation System ) | |
| 120 S. Central Ave. ) | |
| Clayton, Missouri, 63105 ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR DISABILITY DISCRIMINATION & HARASSMENT IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, THE ADA AMENDMENTS ACT & THE MISSOURI HUMAN RIGHTS ACT**

**COMES NOW** Plaintiff, John Simonis, and for his cause of action against Defendant Kraft Heinz Foods Company LLC, states as follows:

**PARTIES**

1. John Simonis ("Mr. Simonis" or "Plaintiff") resides in Green Castle, Missouri. He is a former employee of Kraft Heinz Foods Company LLC.

2. Kraft Heinz Foods Company LLC ("Kraft") is a foreign food processor that operates a meat processing plant in Kirksville, Missouri.

3. Kraft is an employer within the meaning of the Americans with Disabilities Act ("ADA") and the ADA Amendments Act ("ADAAA") because it employs fifteen or more individuals. Kraft is also an employer within the meaning of the Missouri Human Rights Act ("MHRA") because it employs six or more individuals within Missouri.

**JURISDICTION AND VENUE**

4. Mr. Simonis brought this action against Defendant pursuant to the ADA and the ADAAA because Kraft discriminated against, harassed, and terminated Mr. Simonis based on his disability. As such, this Court has original jurisdiction over Mr. Simonis' ADA and ADAAA claims pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Kraft operates a food plant within this District and a substantial part of the unlawful conduct giving rise to Mr. Simonis' claims occurred in this District.

6. This Complaint is also brought pursuant to the MHRA. This Court has supplemental jurisdiction over Mr. Simonis' state law claim because the state law claim forms part of the same case or controversy under Article III of the Constitute and derive from a common nucleus of operative facts such that they would be expected to be tried in one proceeding.

7. On or about August 6, 2021, Mr. Simonis filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR") based on his claims of disability discrimination, harassment, and retaliation. (A copy of the Charge is attached as **Ex. A**).

8. The matter was assigned EEOC Charge No. 563-2021-02470. (A copy of the EEOC Charge is attached as **Ex. A**).

9. On or about December 6, 2021, the EEOC issued Mr. Simonis a Right to Sue Notice ("RTS"). (A copy of the RTS is attached as **Ex. B**).

10. Mr. Simonis' Petition is filed within ninety days of the issuance of the EEOC RTS and within two years of the discrimination complained of.

11.     Mr. Simonis has exhausted his administrative remedies against Defendant regarding his claims of disability discrimination, harassment and retaliation.

## GENERAL ALLEGATIONS

12.     In 2017, Mr. Simonis started work at Kraft's meat processing plant in Kirksville, Missouri, as an Operator Technician.

13.     Mr. Simonis was on the night shift at the Kraft plant and worked from 3:00 P.M. until 3:00 A.M. four days a week.

14.     Mr. Simonis routinely worked overtime at the Kraft plant.

15.     Mr. Simonis was in good health when he started work at Kraft, other than the fact that he has Type II diabetes.

16.     The work environment at Kraft's plant is stressful.  There are loud sounds and distracting noise levels in the plant.  Workers are also exposed to hazardous equipment and conditions.

17.     The day shift workers contribute to the hazardous conditions because they often leave the area where Mr. Simonis works in disarray.

18.     In February 2018, Brandon Douglas became Mr. Simonis' supervisor.

**MR. SIMONIS IS DISABLED**

19.     In 2018, Mr. Simonis began to experience shortness of breath and fatigue.

20.     Mr. Simonis sought medical treatment for his shortness of breath and fatigue.  It was discovered that Mr. Simonis had suffered a heart attack due to coronary artery disease ("CAD").

21.     On December 26, 2018, Mr. Simonis underwent a life-saving procedure in which three stints were surgically implanted.

22. On August 31, 2019, Mr. Simonis lost consciousness and was treated in the emergency room.

23. A few days later, Mr. Simonis nearly suffered a stroke while being treated in his doctor's office.

24. Mr. Simonis was rushed to the emergency room (again) for life-saving treatment.

25. In September 2019, Mr. Simonis underwent a life-saving procedure in which a pacemaker was installed to correct an irregular heart rhythm.

26. Mr. Simonis' CAD, irregular heart rhythm, and other medical conditions interfere with a least one major life activity, including working, lifting, breathing, walking, running, seeing, bending, and other medical conditions.  Mr. Simonis cannot spend more than two hours in the meat lockers or similar areas of the Kraft plant that are maintained at freezing temperatures.  Mr. Simonis cannot work near the magnetic area in the mix room.  Mr. Simonis cannot climb the twelve- to fourteen-foot-tall scraper in the mix room.

27. Despite Mr. Simonis' work limitations described above, Mr. Simonis could still perform the essential functions of his Operator Technician position.

**COVID-19 EXPOSURE AT WORK**

28. During the winter of 2020, COVID-19 was running rampant through Kraft's Kirksville plant.  Numerous workers were sick with COVID-19 and some were even hospitalized.

29. On or about November 3, 2020, and about four hours into his twelve-hour shift, Mr. Simonis started feeling sick.  Mr. Simonis had passed the COVID-19 screening procedure earlier in his shift.

30. Mr. Simonis left work early on November 3, 2020, because he felt sick and he missed work the following day.

31.     On or about November 5, 2020, Mr. Simonis had a high fever and eventually tested positive for COVID-19.

32.     The COVID-19 virus exacerbated Mr. Simonis' health conditions and he began to experience severe shortness of breath.

33.     Mr. Simonis missed five days of work total due to being infected with COVID-19.

34.     After Mr. Simonis returned to work, he learned that the Kraft plant employees discussed his health and opined that Mr. Simonis would not survive COVID-19 due to his health conditions.

**OPEN POSITION MR. SIMONIS DESIRED**

35.     In November 2020, Mr. Simonis became aware of a new position in the "inedible" department that opened due to a retirement.

36.     Mr. Simonis had worked in the "inedible" department during overtime shifts.

37.     Mr. Simonis was qualified and trained to work in the "inedible" department position.

38.     Mr. Simonis told Mr. Douglas that he believed the position in the "inedible" department would be less physically demanding than his current position in the mix room.

39.     Mr. Simonis told Brian Schumacher, a supervisor, that he was interested in the open position.

40.     Mr. Schumacher told Mr. Simonis that he could have the open position.

41.     In January 2021, Mr. Simonis learned that human resources blocked his transfer to the new position.

**ADVERSE REACTION TO COVID-19 VACCINE**

42. On or about December 23, 2020 (on his day off), Mr. Simonis received his first COVID-19 vaccine.

43. Two hours after Mr. Simonis received the vaccine, his vision blurred, he saw floaters, and eventually lost the vision in his right eye due to a vitreous hemorrhage.

44. On or about December 24, 2020, Mr. Simonis told Mr. Douglas that he experienced an adverse reaction to the COVID-19 vaccine.

45. Mr. Simonis did not miss any time from work after he suffered the adverse reaction from the COVID-19 vaccine.

46. Unfortunately, the vision in Mr. Simonis' right eye did not improve on its own.

47. On February 9, 2021, Mr. Simonis had surgery on his right eye to improve his vision. However, Mr. Simonis' vision was not fully restored.

48. Mr. Simonis had a post-surgical follow-up appointment scheduled for February 17, 2021, which was his regularly scheduled day off.

49. Mr. Simonis told Mr. Douglas that he had a post-surgical follow-up appointment scheduled for February 17, 2021, and could not work overtime on that day.

**HARASSED FOR BEING DISABLED & REQUESTING AN ACCOMODATION**

50. On or about February 13, 2021, Mr. Simonis noticed that he was scheduled to work overtime on February 17 2021, the day of his post-surgical follow-up appointment.

51. On or about February 15, 2021 (six days after Mr. Simonis had eye surgery), Mr. Simonis reminded Mr. Douglas that he could not work overtime on February 17, 2021, because he had a post-surgical follow-up appointment.

6

52. Later that same night, Mr. Simonis sat in Kraft's break room and noticed that Mr. Douglas mumbled something as he walked by.

53. Shortly thereafter, Troy Smith, another supervisor, came to Mr. Simonis' work area and told him that that Mr. Douglas wanted to speak to him.

54. Mr. Simonis told Mr. Smith that he planned on speaking to Stephen Davis, Plant Manager, about being scheduled to work overtime on the day he had requested off to seek medical care.

**TERMINATED WITHOUT WARNING.**

55. Less than an hour later, Mr. Douglas came to Mr. Simonis' work area and said, "Give me your badge."   Mr. Douglas also told Mr. Simonis that he was "walking him out due to insubordination."

56. On or about February 20, 2021, Chuck Nicholson, HR, called Mr. Simonis and told him that he was terminated and said that it was a "done deal."

57. Neither Mr. Nicholson, nor anyone in Human Resources, met with Mr. Simonis or provided Mr. Simonis any paperwork prior to his termination to discuss warnings or other criteria to justify his termination.

58. Defendant did not engage in an interactive process before terminating Mr. Simonis.

**PRETEXT**

59. After Mr. Simonis was terminated, Kraft changed the reason for Mr. Simonis' termination from insubordination to poor performance and even workplace violence.

7

**SERIOUS CAD PROBLEMS CONTINUE**

60. In October 2021, Mr. Simonis' cardiologist discovered that a coronary artery was blocked. Mr. Simonis underwent a life-saving cardiac procedure in which the artery was re-opened to 60%.

61. In December 2021, Mr. Simonis' blockage was re-evaluated and it was discovered that the coronary artery was completely blocked again.

62. Mr. Simonis continues to be closely monitored for his CAD.

**COUNT I – DISABILITY DISCRIMINATION & HARASSMENT IN VIOLATION OF THE ADA AND ADAAA**

63. Mr. Simonis reasserts and re-alleges the allegations contained in paragraphs 1 through 62 as if fully set forth herein.

64. The acts described above constitute disability discrimination and harassment in violation of the ADA and the ADAAA.

65. Mr. Simonis has CAD, heart rhythm irregularities, diabetes, vision problems, and other medical conditions that substantially limit at least one major life activity, including working, lifting, breathing, walking, running, seeing, bending, and other medical conditions. This renders Mr. Simonis disabled within the meaning of the ADA and the ADAAA.

66. Defendant knew of Mr. Simonis' CAD, diabetes, and vision problems because Mr. Simonis took time off work due to complications from his CAD, took breaks at work to monitor his blood sugar levels, and informed Defendant of each development in his eye problems and surgery.

67. Mr. Simonis was a qualified individual under the ADA and the ADAAA. He could successfully perform the essential functions of his position with or without a reasonable accommodation.

68.     Defendant harassed Mr. Simonis and terminated his employment because he was disabled and because he requested a reasonable accommodation in the form of time off from work to seek medical care for his eye condition.

69.     Mr. Simonis suffered great emotional upset due to the fact that he was harassed and terminated six days after he had eye surgery and because he needed time off work to seek medical treatment for his eye condition.  He was angry, upset, lost sleep, and was constantly worried about how he would support his family.

70.     Defendant's harassment of Mr. Simonis based on his disability and because he requested an accommodation was intentional and done with malice and/or a reckless indifference to Mr. Simonis' protected rights.

**WHEREFORE**, Plaintiff prays for judgment against Defendant on Count I of his Complaint, for a finding that he has been subjected to unlawful disability discrimination and harassment prohibited by the ADA and the ADAAA; for an award of back pay, including fringe benefits, bonuses, cost of living increases and other benefits, including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' and expert fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT II – RETALIATION IN VIOLATION OF THE ADA AND THE ADAAA

71.     Mr. Simonis reasserts and re-alleges the allegations contained in paragraphs 1 through 70 as if fully set forth herein.

72.     The acts described above constitute retaliation in violation of the ADA and the ADAAA.

9

73. Mr. Simonis has CAD, heart rhythm irregularities, diabetes, vision problems, and other medical conditions that substantially limit at least one major life activity, including working, lifting, breathing, walking, running, seeing, bending, and other medical conditions.  This renders Mr. Simonis disabled within the meaning of the ADA and the ADAAA.

74. Mr. Simonis asked Defendant to provide him with a reasonable accommodation in the form of time off from work to seek medical care for his eye condition.

75. Mr. Simonis had a good faith belief that Defendant would grant him time off to obtain medical treatment for his eye condition.

76. Defendant made no effort to engage in the interactive process and/or provide Mr. Simonis with a reasonable accommodation for his disability and instead, harassed Mr. Simonis and terminated his employment in retaliation for requesting a reasonable accommodation.

77. There is a causal connection between Mr. Simonis' protected activity of requesting an accommodation in the form of time off work to obtain medical treatment and the harassment and discharge which followed.

78. Mr. Simonis suffered great emotional upset due to the fact that he was retaliated against for requesting a reasonable accommodation.  He was angry, upset, frequently lost sleep, and was constantly worried about how he would support himself and his family.

79. Defendant's act of retaliating against Mr. Simonis and terminating his employment because he requested a reasonable accommodation was intentional and done with malice and/or a reckless indifference to Mr. Simonis' protected rights.

**WHEREFORE**, Plaintiff prays for judgment against Defendant on Count II of his Complaint, for a finding that he has been subjected to unlawful retaliation prohibited by the ADA and the ADAAA; for an award of back pay, including fringe benefits, bonuses, cost of living

increases and other benefits, including interest; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' and expert fees and expenses; and for such other and further relief as the Court deems just and proper.

## COUNT III– DISABILITY DISCRIMINATION & HARASSMENT IN VIOLATION OF THE MHRA

80. Mr. Simonis reasserts and re-alleges the allegations set forth in paragraphs 1 through 79 as if fully set forth herein.

81. The acts described above constitute disability discrimination and harassment in violation of the MHRA.

82. Mr. Simonis has CAD, heart rhythm irregularities, diabetes, vision problems, and other medical conditions that substantially limit at least one major life activity, including working, lifting, breathing, walking, running, seeing, bending, and other medical conditions. This renders Mr. Simonis disabled within the meaning of the MHRA.

83. Alternatively, Defendant regarded Mr. Simonis as disabled based on his CAD, heart rhythm irregularities, diabetes, and vision problems.

84. Mr. Simonis was a qualified individual under the MHRA. He could successfully perform the essential duties of his position with or without a reasonable accommodation.

85. Defendant harassed Mr. Simonis and terminated his employment because he was disabled and because he requested a reasonable accommodation in the form of time off from work to seek medical care for his eye condition.

86. Mr. Simonis suffered great emotional upset due to the fact that he was harassed and terminated six days after he had eye surgery and because he needed time off work to seek medical

treatment for his eye condition.  He was angry, upset, lost sleep, and was constantly worried about how he would support his family.

87. Defendant's harassment of Mr. Simonis based on his disability and because he requested an accommodation was intentional and done with malice and/or a reckless indifference to Mr. Simonis' protected rights.

88. Defendant's conduct demonstrates that Mr. Simonis' disabilities played a role in and had a determinative influence in Defendant ultimately termination of Mr. Simonis.

89. Mr. Simonis is under information and belief that his disabilities, or being regarded has having such impairments by Defendant, was a determinative influence in Defendant ultimately terminating Mr. Simonis.

90. As a direct and proximate result of Defendant's actions and/or omissions, Mr. Simonis has suffered – and continues to suffer – garden variety emotional distress including but not limited to experiencing frequent bouts of stress; loss of sleep; worry and anxiety about how he will financially support his family; and worry and anxiety about how he will find gainful employment.

91. As a direct and proximate result of Defendant's actions and/or omissions, Mr. Simonis has been – and continues to be – deprived of income, as well as other monetary and non-monetary benefits.

92. Defendant's conduct in discriminating against Mr. Simonis was willful, wanton, malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the protected rights of Mr. Simonis, thus justifying an award of punitive damages in an amount to be determined.

93. Mr. Simonis is entitled to recover reasonable attorneys' fees from Defendant, as provided in Mo. Rev. Stat. § 213.111.2.

**WHEREFORE**, Plaintiff prays for judgment against Defendant on Count III of his Complaint, for a finding that he has been subjected to unlawful disability discrimination and harassment prohibited by the MHRA; for an award of back pay, including lost commissions and other benefits, including interest; for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' and expert fees and expenses, and for such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues triable by jury.

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Michael A. Williams
Michael A. Williams MO Bar # 47538
Courtney Stout MO Bar # 70375
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamsdirks.com
cstout@williamsdirks.com
(o) 816-945-7110
(f) 816-945-7118

**Attorneys for Plaintiff**