# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| JOHN SIMONIS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:22-cv-00009-SEP |
| | ) |
| KRAFT HEINZ FOODS COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendant Kraft Heinz Foods Company LLC's motion to dismiss Count Two of the complaint.  Doc. [11].  For the reasons set forth below, the motion is denied.

### FACTS AND BACKGROUND[1]

This employment discrimination case arises out of events leading up to Plaintiff's 2021 termination from his job at Defendant's meat processing plant in Kirksville, Missouri, where he had been employed as an operator technician since 2017.  Doc. [1] ¶¶ 2, 12, 55-56.  Plaintiff maintains that he started his employment in good health but was diagnosed with coronary artery disease in 2018 after he experienced a heart attack.  *Id*. ¶¶ 19-20.  Plaintiff states that his heart condition required multiple surgeries, interferes with his ability to lift, breath, walk, run, see, and bend, and prevents him from spending more than two hours in the freezing temperatures of the meat lockers, working near magnets in the plant's mix room, or climbing the scraper in the mix room.  *Id*. ¶¶ 26-27.  Plaintiff contracted COVID-19 in November of 2020, which worsened his heart condition and caused him to miss work.  *Id*. ¶¶ 28-34.  When he returned to work, he learned that his fellow employees had been discussing his health and speculating about whether he would survive his infection.  *Id*. ¶ 34.  Plaintiff also alleges that he suffered an adverse reaction to the COVID-19 vaccine that harmed his vision.  *Id*. ¶¶ 42-46.

On February 9, 2021, Plaintiff underwent surgery on his eye due to the vision impairment caused by the COVID-19 vaccine.  *Id*. ¶ 47.  He scheduled a follow-up doctor's appointment on February 17, 2021, and notified his supervisor, Brandon Douglas, that he would not be available to work that day.  *Id*. ¶¶ 47-49.  Plaintiff alleges that on February 13th he noticed that he was

---

[1] For purposes of the motion to dismiss, the Court takes the factual allegations in the Complaint, Doc. [1], to be true.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

scheduled to work on February 17th, and he reminded Mr. Douglas of his appointment. *Id*. ¶ 50-51. Plaintiff alleges that later that day, another supervisor, Troy Smith, told Plaintiff that Mr. Douglas wanted to speak with him in his office. *Id*. ¶ 53. Plaintiff responded that he planned to speak to the plant manager, Stephen Davis, about being scheduled to work overtime on a day he had requested off to seek medical care. *Id*. ¶ 54. Less than an hour later, Mr. Douglas approached Plaintiff, asked for his badge, and walked him out of the plant for insubordination. *Id*. ¶ 55. Five days later, on February 20, 2021, Chuck Nicholson from Defendant's human resources office called Plaintiff to notify him that his employment was terminated. *Id*. ¶ 56. Plaintiff asserts that Defendant later changed the reason for his termination from insubordination to poor performance and workplace violence. *Id*. ¶ 59.

On February 24, 2022, Plaintiff filed this three-count action, alleging disability discrimination and harassment in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et. seq., in Count One, retaliation in violation of the ADA in Count Two, and disability discrimination and harassment in violation of the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010-137, in Count Three.

Defendant now moves to dismiss Count Two for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiff did not assert an ADA retaliation claim in his charge of discrimination to the EEOC, and therefore failed to exhaust his administrative remedies.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 12(b)(6), courts shall not dismiss any complaint that states a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible on its face when the pleaded facts allow the Court to reasonably infer that the defendant is liable. *Id.* at 678. The Court views all facts and draws all reasonable inferences in favor of the nonmoving party. *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2008) (citing *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008)). The Court must accept the facts alleged as true, "even if doubtful." *Twombly*, 550 U.S. at 555. Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## DISCUSSION

The ADA makes it unlawful to discriminate against a "qualified individual with a disability" because of the disability. *Bahl v.Cnty. of Ramsey*, 695 F.3d 778, 83 (8th Cir. 2012). The ADA also contains an anti-retaliation provision that prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation under the ADA, a plaintiff must establish "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Lors v. Dean*, 746 F.3d 857, 867 (8th Cir. 2014) (quoting *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006)). Under the ADA, a retaliation claim "requires a but-for causal connection between the employee's assertion of [his] ADA rights and an adverse action by the employer." *Oehmke v. Medtronic, Inc*., 844 F.3d 748, 758 (8th Cir. 2016) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). "In . . . retaliation claims, a temporal connection between an event and an adverse employment action can serve as evidence supporting a *prima facie* [ ] showing of causation." *Myers v. Hog Slat., Inc.*, 55 F. Supp. 3d 1145, 1158 (N.D. Iowa 2014). "[T]iming *alone* is not adequate to establish causation unless the timing is 'very close,' usually meaning less than one month." *Id.* (quoting *Lors v. Dean,* 746 F.3d 857, 865-66 (8th Cir. 2014).

Defendant asserts that Plaintiff's retaliation claim fails as a matter of law because Plaintiff did not administratively exhaust the claim. Before filing a lawsuit alleging retaliation in violation of the ADA, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC and receiving a right-to-sue letter. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994); *see, e.g.*, *Russell v. TG Missouri Corp*., 340 F.3d 735, 747-48 (8th Cir. 2003) (affirming dismissal of ADA retaliation claim where the plaintiff did not assert retaliation claim or check the retaliation box in his EEOC charge); *Ware v. Lumiere Place Casino*, 2019 WL 6716371, at *4 (E.D. Mo. Dec. 10, 2019) (dismissing retaliation claim where plaintiff did not assert retaliation claim or check the retaliation box in his EEOC charge). The exhaustion requirement ensures that the EEOC gets the first opportunity to investigate discriminatory practices, *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996), and puts the charged party on notice of the claims at issue, *Tart v. Hill Behan Lumber Co*., 31 F.3d 668, 671 (8th Cir.

3

1994).  *See also Wallin v. Minn. Dep't of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998) (To "[a]llow[] a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge.") (quoting *Williams*, 21 F.3d 218, 223 (8th Cir.1994)).  Because of its notice function, the completion of the EEOC process constitutes exhaustion only as to allegations that are "'like or reasonably related to the substance of the charges'" submitted to the EEOC.  *Lindeman v. Saint Luke's Hosp. of Kansas City*, 899 F.3d 603, 608 (8th Cir. 2018) (quoting *Williams*, 21 F.3d at 222).

It is not necessary "that subsequently-filed lawsuits mirror the administrative charges" precisely.  *Wedow v. City of Kansas City*, 442 F.3d 661, 674 (8th Cir. 2006) (quoting Duncan v. Delta Consol. Indus., Inc., 371 F3d 1020, 1025 (8th Cir. 2004).  Courts should "construe administrative charges liberally, [but they] will not invent, *ex nihilo*, a claim that was not made before the relevant agency."  *Weatherly v. Ford Motor* Co., 994 F.3d 940, 944 (8th Cir. 2021). The Eighth Circuit has made clear that retaliation claims, in particular, are not considered to be reasonably related to underlying discrimination claims and thus must be independently exhausted.  *Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015); *see also Wedow*, 442 F.3d at 672 ("We have long treated discrimination and retaliation claims as distinct for exhaustion purposes, so that exhausting one does not usually exhaust the other.").  Nevertheless, sometimes a claim is "so like or reasonably related to an exhausted claim" that it will be allowed to proceed. *Weatherly*, 994 F.3d at 944-45.  "The key is that the scope of a [subsequent] judicial complaint can be no broader than the scope of the EEOC investigation that 'could reasonably be expected to grow out of the charge' in the EEOC complaint."  *Id.* at 945 (quoting *Wedow,* 442 F.3d at 674).

Here, Plaintiff checked the "disability", "age,"  and "other" boxes in the section of the EEOC charge titled "CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*."  Doc. [1-1] at 2.  He did not check the "retaliation" box in that same section of the charge.  In the section of the charge form where Plaintiff was to describe the basis for his charge, he alleged age discrimination, disability discrimination, and harassment, but he made no explicit reference to retaliation.  *Id.* at 4.  He summarized the claims in his charge by stating, "[b]ased on the above, I believe I have been discriminated against and harassed based on my age and disability in violation of the Missouri Human Rights Act and federal law."  *Id.*  Defendant asserts

that because Plaintiff failed to specifically check the retaliation box, and did not explicitly allege retaliation in his charge, he has not exhausted that claim.

Plaintiff argues that he properly exhausted his retaliation claim, notwithstanding the fact that he failed to check the "retaliation" box or explicitly reference retaliation in his charge, because the narrative in his charge describes actions that are retaliatory in nature.  The Eighth Circuit has explained that even where a plaintiff has not explicitly referenced a retaliation claim in his charge, he may yet show that he has exhausted his administrative remedies if the retaliation claim "is reasonably related to, or grows out of the statement in the administrative charge . . .."  *Russell*, 340 F.3d at 747-48; *see also Wallace v. DTG Operations, Inc*., 442 F.3d 1112, 1123 (8th Cir. 2006) ("The information contained in an EEOC charge must be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim, but it need not specifically articulate the precise claim or set forth all the evidence an employee may choose to later present in court.").

Plaintiff argues that the following facts, which were included in his charge statement, put Defendant and the EEOC on notice that a retaliation claim was being asserted:

- Plaintiff received a COVID-19 vaccination on December 23, 2020;
- Two hours after receiving the vaccine he experienced a vitreous hemorrhage in his right eye;
- Plaintiff had eye surgery on February 9, 2021;
- The eye surgery was a success;
- Plaintiff had a post-surgery follow-up appointment on February 17, 2021;
- Plaintiff told his supervisor, Mr. Douglas, about the appointment;
- On February 13, 2021, Plaintiff noticed that he was scheduled to work on February 17, 2021;
- On February 15, 2021, Plaintiff told Mr. Douglas that he could not work on February 17;
- Later that night, Plaintiff heard Mr. Douglas mumble something as he walked by the break room at work;
- After Plaintiff returned to his workstation, another supervisor, Mr. Smith, told Plaintiff that Mr. Douglas needed to speak with him;
- Plaintiff then told Mr. Smith that he was going to reach out to the plant manager the next day, as the plant manager was not on site during the night shift;
- Later that night, Mr. Douglas came to Plaintiff's work area, asked for his badge, and walked him out, alleging that he had been insubordinate;
- Five days later, on February 20, 2021, Chuck Nicholson from HR called to tell Plaintiff that he was terminated.

Doc. [13] at 8-9.  Plaintiff says that the above listed facts "describe[ ] a disability (lost vision in the right eye due to a vitreous hemorrhage), protected activity (a request for a reasonable

accommodation in the form of time off to attend a doctor's visit), and an adverse action (termination)," and as such, they clearly indicate that he was alleging a retaliation claim in violation of the ADA. *Id*. at 10.

Defendant argues that the facts cited by Plaintiff do not describe retaliation with enough specificity to put either Defendant or the EEOC on notice of a retaliation claim. More specifically, Defendant asserts that while Plaintiff mentioned a protected activity and adverse employment action, that does not save his claim because he failed in his charge to allege facts that connected the protected activity to the termination. *See Lors*, 746 F.3d at 867 (to establish a prima facie case of retaliation under the ADA, a plaintiff must establish a causal connection between the protected activity and the adverse action).

Though it is a close call, the Court finds that Plaintiff's charge statement described retaliatory acts sufficient to put both the EEOC and his employer on notice of a retaliation claim, and thus his retaliation claim is deemed exhausted. *See Russell*, 340 F.3d at 748 (a plaintiff must show that the text in the charge "provide[d] sufficient notice of" the retaliation claim) (citing *Wallin*, 153 F.3d at 688). The Eighth Circuit's recent decision in *Weatherly* is instructive. In *Weatherly*, an assembly line worker at a Ford Motor plant alleged, among other things, that Ford discriminated against him in violation of the Missouri Human Rights Act when it terminated him for missing work because of his asthma. *Weatherly*, 994 F.3d at 945. In his administrative charge, Weatherly alleged only that Ford "failed to reasonably accommodate [his] disability." *Id*. The lower court dismissed his discriminatory termination claim for failure to exhaust administrative remedies, noting that Weatherly's administrative charge focused only on Ford's failure to accommodate his disabilities, and not on the allegedly retaliatory termination claim brought in his federal complaint. *Id*. at 946. The Eighth Circuit reversed that determination, noting that "Weatherly's accommodation and termination claims are two sides of the same coin, and claims closely connected in this way should be allowed to proceed, if we aren't to give mere lip service to the duty to construe administrative complaints liberally." *Id*. The Eighth Circuit held that "an EEOC investigation into Weatherly's termination could reasonably be expected to grow out of the charge made in Weatherly's administrative complaint." *Id*. The court explained that Ford "simultaneously terminated Weatherly instead of accommodating his request to use paid time off to cover for his asthma-related absence," and that "sometimes, as here, a failure to accommodate is so closely linked to an adverse employment action that it is reasonable to think

6

that the scope of the administrative investigation would have included a review of that adverse action." *Id*.

Similarly here, Plaintiff's allegations that his employer discriminated against him by refusing to accommodate his medical needs by allowing time off for a doctor's appointment are so closely related to his claim for retaliatory termination that an investigation into whether his termination was retaliatory "could reasonably be expected to grow out of the charge" made in Simonis's administrative complaint.  While Plaintiff does not explicitly allege that he was terminated *because* he requested time off to go to a doctor's appointment, the facts alleged by Plaintiff are sufficient to support an inference of a causal connection between the protected activity and the adverse action.  *See Oehmke*, 844 F.3d at 758.  As noted above, in retaliation claims, "a temporal connection between an event and an adverse employment action can serve as evidence supporting a *prima facie* [ ] showing of causation," *Myers*, 55 F. Supp. 3d at 1158, and while "timing *alone* is not [necessarily] adequate to establish causation," it can be when "the timing is 'very close,' usually meaning less than one month."  *Id.* (citing *Lors v. Dean,* 746 F.3d 857, 865-66 (8th Cir. 2014) (emphasis in original).  Here, Plaintiff alleged in his administrative charge that he asked for time off to get medical care; he was nonetheless scheduled to work during his doctor's appointment; he reminded his supervisor he could not work that day; he was walked off the worksite later that same day; and he was fired within five days.  Thus, the charge statement sufficiently connects the protected activity to the termination to put Defendant and the EEOC on notice that Plaintiff was asserting a retaliation claim.  Given the liberal construction due Simonis's charge and Rule 12(b)(6)'s requirement that allegations be viewed in the light most favorable to Simonis, that is enough for now.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Count Two, Doc. [11], is **DENIED.**

Dated this 3rd day of March, 2023.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE